# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                                                                        Criminal Action No. 2:12CR04

**RICHARD JASON BROWN,**

    **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Richard Jason Brown, in person and by counsel, Katy J. Cimino, appeared before me on May 15, 2012. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Seven of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court then asked counsel for the Government to summarize the written Plea Agreement. Defendant then stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the

Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Richard Jason Brown, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count Seven of the Indictment and the elements the government would have to prove, charging him with possession of materials used to manufacture methamphetamine, in violation of Title 21, United States Code, Sections 843(a)(6) and 843(d)(2).

The undersigned then reviewed the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Seven of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was: imprisonment for a term of not more than ten (10) years; a fine of not more than $250,000.00 could be imposed; both fine and imprisonment could be imposed; a period of not more

than three (3) years of supervised release in addition to any term of imprisonment; and, that the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. He also understood that his sentence could be increased if he had a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his conditional waiver of appellate rights as follows:

Ct: Did you and Ms. Cimino discuss that you have a right, under 18 U.S.C., Section 3742, to appeal your conviction and your sentence against you to the Fourth Circuit Court of Appeals, located in Richmond, Virginia, within fourteen days of the judge's oral announcement of that sentence to you?

Def: Yes, sir.

Ct: Did you also understand that, under 28 U.S.C., Section 2255, you may have an opportunity to file a motion collaterally attacking or challenging that sentence and how that sentence is being imposed by the Bureau of Prisons

Def: Yes, sir.

Ct: That's commonly called a writ of habeas corpus type motion. Are you familiar with that term, sir?

Def: No, sir.

Ct: You did discuss 28 U.S.C., Section 2255 with your lawyer?

Def: Yes, sir.

Ct: Did you understand under paragraph 15 of your written plea agreement if the United States District Judge sentences you to an actual sentence which is the same as or equal to a

| | |
|---|---|
| | guideline-driven sentence with a total offense level of 23 or lower, then you give up your right to directly appeal that conviction and sentence to the Fourth Circuit Court of Appeals? |
| Def: | Yes, sir. |
| Ct: | And you further give up your right to collaterally attack or challenge that sentence using habeas corpus type motion filed under 28 U.S.C., Section 2255? Is that correct? |
| Def: | Yes, sir. |
| Ct: | Did you understand paragraph 15 of your written plea agreement when you signed that agreement on . . . May 9, 2012? |
| Def: | Yes, sir. |
| Ct: | Did you read each and every line of that paragraph, paragraph 15, of your written plea agreement before you signed it? |
| Def: | Yes, sir. |
| Ct: | Is that what you intended to do under the terms and provisions of paragraph 14 of your written plea agreement? |
| Def: | Yes, sir. |
| Ct: | As a practical matter, then, do you understand that if your actual sentence is the same as or equal to a level 23 or lower under the guidelines and you then file a direct appeal or you later file a collateral attack or challenge under 28 U.S.C. 2255, the court who reviews your appeal or your indirect or collateral attack, has a right to look at the plea agreement, has a right to look at the transcript from today's hearing, the order that comes out of today's hearing, your Judgment and Commitment Order that comes out of the sentencing hearing, your transcript of your sentencing hearing and that court, the reviewing court, will have a right throw out any |

appeal that you file and have a right to throw out any collateral attack you may file, without giving you a further right of hearing. Do you understand that?

Def: Yes, sir.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea bargain agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement dated May 2, 2012, and signed by him on May 5, 2012, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Seven of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count Seven of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court

make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant in particular understood that there was no agreement regarding the applicability of Guideline 2D1.1(b)(10)(C)(ii), that is, whether the defendant's manufacture of methamphetamine created a substantial risk of harm to human life and to the environment. Defendant understood the District Judge would make the determination using a preponderance of the evidence standard.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea.. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant, in particular, also understood that even though his participation in the RDAP program was recommended by the United States, in paragraph 12D of the written plea agreement,

the Bureau of Prisons was not bound by that recommendation. Defendant understood that his relevant conduct was listed in the written plea agreement to be more than ten but less than forty grams of pseudoephedrine but that the District Judge was not bound by that conduct. Defendant further understood that forfeiture of assets was part of the sentence that may be imposed and waived all challenges to any forfeiture carried out. Defendant understood his right to a jury trial and waived his right to same.

Thereupon, Defendant, Richard Jason Brown, with the consent of his counsel, Katy Cimino, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Seven of the Indictment.

The Court then heard the testimony of Upshur County Sheriff's Department Cpl. Rocky Hebb, who testified he that, on September 18, 2011, in Hinkleville, Upshur County, West Virginia, he responded to a noise complaint coming from that area. Cpl. Hebb went to a convenient store, where he encountered a truck, belonging to Mr. Brown, which was parked in the parking lot of that convenience store. Defendant was in the passenger's seat. Sgt. Powers had initially searched the vehicle and Cpl. Hebb assisted near the end of the search. Sgt. Powers' drug dog was involved in the search. Upon searching Defendant's truck and based on Cpl. Hebb's experience in investigating methamphetamine cases, he identified materials used in the manufacture of methamphetamine; specifically, he identified lithium batteries, coffee filters, glass and plastic containers, funnels, plastic tubing and an aquarium tube pump.

Upon questioning of Defendant by Cpl. Hebb and Sgt. Powers, he stated he possessed Sudafed, "the pills, the Ecstasy," pump, jar, batteries and tubing. There was Sudafed residue in one bag and methamphetamine residue in another. Defendant told Cpl. Hebb and Sgt. Powers he had used methamphetamine for fifteen years on a weekly basis. Defendant said he was in possession of the batteries, pump and Sudafed because he was collecting it in order to trade those items to get

methamphetamine. Defendant told Cpl. Hebb and Sgt. Powers he possessed the used tubing to "keep from having to buy it." Defendant stated he attempted to manufacture or had manufactured methamphetamine eight or ten times over the past seven or eight years, but he usually attempted to purchase methamphetamine or trade for it. Defendant told Cpl. Hebb and Sgt. Powers he had last manufactured methamphetamine two weeks earlier and only enough for his habit. Defendant stated he usually made two grams of methamphetamine when he manufactured it himself. Defendant told Cpl. Hebb and Sgt. Powers he manufactured methamphetamine by crushing the Sudafed, mixing it with ammonia, batteries and starting fluid, mixing in salt and Draino, and then pumping smoke into that mixture. Defendant told Cpl. Hebb and Sgt. Powers he traded pills, batteries and starting fluid. Defendant would not divulge the identity of the person or persons who assisted him in the manufacture of methamphetamine. Defendant stated he manufactured methamphetamine in the woods in Goshen and in vehicles, specifically, in the truck in which he was sitting. Defendant told Cpl. Hebb and Sgt. Powers he purchased Sudafed every three weeks or "longer" but had purchased three boxes of Sudafed in one month. Defendant had purchased Sudafed at WalMart, Walgreens, and Kroger in Buckhannon, Elkins, Weston, Clarksburg, and Morgantown Defendant stated he did not sell methamphetamine.

Cpl. Hebb testified that the lab results showed that items seized from the truck showed the presence of methamphetamine and pseudoephedrine or ephedrine.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to

Count Seven of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed; Defendant made a knowing and voluntary plea of guilty to Count Seven of the Indictment; and Defendant's plea is independently supported by the testimony of Cpl. Hebb, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Seven of the Indictment and recommends he be adjudged guilty on said charge as contained in Count Seven of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release previously entered in this matter pending further proceedings.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: May 17, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE